No. 99,203

In the Matter of SHELLEY KURT BOCK, *Respondent*.

(175 P.3d 233)

Opinion filed February 1, 2008.

*Alexander M. Walczak*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with him on the formal complaint for the petitioner.

*John J. Ambrosio*, of Topeka, argued the cause for the respondent, and *Shelley Kurt Bock*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against respondent, Shelley Kurt Bock, of Lawrence, an attorney admitted to the practice of law in Kansas in 1979. A hearing panel of the Kansas Board for the Discipline of Attorneys conducted a formal hearing, as required by Kansas Supreme Court Rule 211 (2007 Kan. Ct. R. Annot. 304).

The hearing panel concluded that Bock violated Kansas Rules of Professional Conduct (KRPC) as follows: KRPC 1.1 (2007 Kan. Ct. R. Annot. 384) (competence); KRPC 1.3 (2007 Kan. Ct. R. Annot. 398) (diligence); KRPC 1.4 (2007 Kan. Ct. R. Annot. 413) (communication); KRPC 1.15(a) (2007 Kan. Ct. R. Annot. 473) (safekeeping property); KRPC 1.16 (2007 Kan. Ct. R. Annot. 487) (declining or terminating representation); and KRPC 3.2 (2007 Kan. Ct. R. Annot. 503) (expediting litigation). The hearing panel recommended that Bock be suspended from the practice of law for a period of 3 years but that suspension be stayed subject to Bock's compliance with a probation and supervision plan for a period of not less than 3 years.

## Hearing Panel's Findings of Fact

This action arose from two disciplinary complaints (DA 9860 and DA 9861). One complaint arose from Bock's representation of a client in a divorce action. Consistent with the usual practice in

Douglas County District Court, the divorce proceeding was bifurcated. The first stage of the proceeding resulted in the granting of the divorce in March 2005. The second stage of the Douglas County proceeding related to the resolution of the issues of property division, child custody, and support. In this case, Bock failed to complete the second stage of the proceeding, despite his client's repeated attempts to contact him. Through several telephone messages, the divorce client advised she was experiencing financial hardship because she was not receiving any child or spousal support.

A year after the divorce was granted, Bock's client filed a complaint with the Disciplinary Administrator's office. Even after Bock was informed of the complaint, Bock did nothing to assist his client in completing the second phase of the divorce proceeding and failed to contact her.

Following the docketing of the complaint, the Disciplinary Administrator wrote Bock on March 21, 2006, requesting that he provide a written response to the complaint. On three occasions (April 13, May 2, and May 9, 2006) the attorney assigned to investigate the complaint requested a written response from Bock. Despite these repeated requests, Bock did not respond regarding this complaint. Later, he told the investigating attorney that he thought the parties had settled, the divorce "fell through the cracks," and he "felt like a deer in the headlights" because of his workload. As of the date of the panel hearing, Bock still had money deposited in this trust account that included costs advanced by the client.

The second complaint arose from Bock's handling of a conservatorship. Bock was appointed as a guardian and coconservator of William Breshears in 1990. Mr. Breshears died in January 2005; his great-niece, who lived out of state, was appointed as the other coconservator. Bock arranged for Breshears' funeral but did not pay any of the final debts of Breshears, did not file an accounting for 2004 or a final accounting, and failed to close the conservatorship estate or to distribute the assets to Breshears' heir at law. The coconservator tried repeatedly to contact Bock by telephone, e-mails, and letters and informed Bock that Breshears' sister and sole heir needed the money from the conservatorship to provide

for her assisted living care and other expenses. Bock failed to respond to these communications and on July 29, 2005, the coconservator retained an attorney to assist her. The attorney, George Catt, tried to contact Bock, making many unsuccessful attempts. During a chance meeting at the Douglas County Courthouse, Catt asked Bock to render an accounting and close the conservatorship. Bock said he was ready to do so but needed the names and addresses of the heirs. Catt provided the information.

Still, Bock failed to provide an accounting or to take any action to close the conservatorship. On September 13, 2005, Catt filed a petition to have Bock removed as coconservator, to require Bock to render a final accounting, and to produce the financial records of the conservatorship estate. Bock received notice of the hearing to be held September 27, 2005, but did not appear even though he was in the courthouse on different matters. The court ordered Bock to file a final accounting within 30 days and to produce the requested financial records. Bock failed to respond to the court's order and on March 7, 2006, was removed as coconservator. Catt then obtained financial records of the conservatorship from the bank. The records showed that Bock paid himself attorney fees which were not approved by the court. Additionally, Catt's investigation of the conservatorship financial records revealed that certificates of deposit were titled in joint tenancy with Bock and Virgil Breshears, a deceased brother of William Breshears, who had resigned as coconservator of William Breshears' estate in September 2002. The certificates of deposit did not indicate that they were part of the conservatorship. Since Bock was listed as the owner, the bank refused to release the money represented by the certificates of deposit. Catt attempted to communicate with Bock, but Bock did not respond. Catt eventually went to Bock's office and, after confronting Bock, obtained Bock's signature on the necessary forms to release the money to Breshears' estate.

## Hearing Panel's Conclusions of Law

Based upon the findings of fact, the hearing panel made several conclusions of law. Noting that KRPC 1.1 requires that lawyers provide competent representation to their clients and KRPC 1.3

requires lawyers to act with reasonable diligence, the panel found Bock failed to meet these requirements when he: (1) failed to complete the divorce proceeding and obtain child support, spousal support, and a division of the marital estate for his client; (2) failed to perform the duties of coconservator and attorney for the conservators of the Breshears' conservatorship by failing to render accountings when due and when requested by the coconservator; and (3) failed to competently provide representation by not closing the conservatorship after Breshears' death.

Next, the hearing panel found that Bock's failures in both cases also violated KRPC 1.4(a), which requires lawyers to keep their clients reasonably informed about the status of a matter and to promptly comply with the reasonable requests for information.

The hearing panel also concluded that Bock's holding of the certificates of deposit of the Breshears' conservatorship in his own name violated KRPC 1.15(a), which requires a lawyer to hold property of clients separately from the lawyer's own property.

Further, Bock's failure to turn over the property and bank records of the Breshears' conservatorship after Catt's numerous requests and the failure to return the cost deposit advanced by his divorce client were found to violate KRPC 1.16(d), which provides that a lawyer should take reasonably practical steps to protect the client's interests when the attorney's representation is terminated, including surrendering papers and property to which the client is entitled and refunding any advance fee that is unearned.

Finally, the hearing panel found that Bock's failure to complete the divorce proceeding, to terminate the Breshears' conservatorship, and to promptly comply with court orders in the conservatorship proceeding violated KRPC 3.2, which requires an attorney to make reasonable efforts to expedite litigation consistent with the interests of the client.

In deciding what discipline to recommend, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (1991). In applying Standard 3, the hearing panel considered the duty violated, the lawyer's mental state, the potential or actual injury caused by the misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* Respondent violated his duties to his clients to provide diligent and competent representation, to provide reasonable communication, and to return his clients' property promptly when he ceased representing them. He also violated his duty to the public and his clients to expeditiously process litigation.

"*Mental State.* Respondent knowingly violated his duty, however, as discussed below. Respondent suffers from clinical depression and anxiety and may not have been able to perform notwithstanding his intellectual ability to know his obligations.

"*Injury.* Respondent's misconduct caused actual injury to his clients.

"*Aggravating or Mitigating Factors.* Aggravating factors are those that may justify an increase in the degree of discipline to be imposed. The Hearing Panel found the following aggravating factors present in this case:

"A Pattern of Misconduct. This case involved two complaints and in both Respondent failed to take action necessary to represent his clients competently and violated the same rules of professional conduct repeatedly.

"Substantial Experience in the Law. Respondent has practiced law for nearly 26 years and has substantial experience.

"Multiple Offenses. The Respondent violated KRPC 1.1, 1.3, 1.4, 1.15(a), 1.16(d), and 3.2. Therefore, the Respondent committed multiple offenses.

"Vulnerability of the Victim. Both [the divorce client] and Mr. Breshears were vulnerable victims of Respondent's conduct.

"Indifference to Making Restitution. Respondent has failed to return to [his divorce client] the $119.00 . . . paid for [the court] costs' deposit which was not so used and Respondent has made no offer to restore the Breshears' heir the extra costs incurred in attorney fees to Mr. Catt because Respondent refused to cooperate in providing information.

"The Hearing Panel has found the following mitigating factors in this case:

"Absence of Prior Disciplinary Record. The Respondent has no prior discipline record.

"Absence of Selfish or Dishonest Motive. The Respondent did not act for his own benefit or to enrich himself.

"Personal or Emotional Problems. The testimony of Dr. Lerner and his report admitted into evidence establish that Respondent suffers from depression, anxiety and possibly an adult attention disorder which are causative factors in Respondent's inability or failure to act when confronted with his failure to perform as expected by himself and his clients.

"Previous Good Character and Reputation. As evidenced by the testimony of his peers and the letters of recommendation submitted into evidence by Respondent, the Respondent has enjoyed a good reputation in his community and particularly among the members of the bar in his same practice areas.

"Remorse. The Respondent is remorseful that his conduct has injured his clients and caused embarrassment to his family and supporters in the bar."

In addition, the hearing panel considered several standards cited by the disciplinary counsel to support his recommendation that

Bock be suspended from the practice of law, including Standards 4.42(a) and (b), 4.12 and 7.2. The panel concluded that suspension would be appropriate but also found

"the probation plan proposed by Respondent is workable, substantial, detailed and submitted in compliance with Rule 211(g). The Panel is mindful that Respondent sought a delay in the hearing to allow more time to prove that the probation plan was working as in place and that the extension was denied due to the difficulty in rescheduling the hearing. We have been impressed with the willingness of [the supervising attorney] to take on extensive supervision obligations over an extended term and with Dr. Lerner's testimony concerning Respondent's treatment and voluntary entry into a treatment program for depression before this proceeding. Moreover we credit the testimony of Respondent's fellow practitioners that Respondent provides valuable legal services in an underserved area of the administration of justice in his community."

The hearing panel made specific recommendations regarding the conditions of the probation plan.

## Analysis

In a disciplinary proceeding, this court considers the evidence, the findings of the hearing panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. *In re Comfort*, 284 Kan. 183, 190, 159 P.3d 1011(2007); *In re Lober*, 276 Kan. 633, 636, 78 P.3d 442 (2003); see Supreme Court Rule 211(f) (2007 Kan. Ct. R. Annot. 304). When a respondent does not file exceptions to the hearing panel's report, the report is deemed admitted under Supreme Court Rule 212(c) and (d) (2007 Kan. Ct. R. Annot. 317). In this case, Bock filed no exceptions to the hearing panel's report.

We conclude that the hearing panel's findings of fact are supported by clear and convincing evidence and that the findings of facts support the hearing panel's conclusions of law. We therefore adopt the hearing panel's findings and conclusions and find that Bock violated KRPC 1.1, 1.3, 1.4, 1.15(a), 1.16, and 3.2.

With respect to the discipline to be imposed, the hearing panel's recommendation is advisory only. The court may impose discipline greater or lesser than that recommended by the hearing panel or

the Disciplinary Administrator. Supreme Court Rule 212(f). Upon consideration of the facts, the conclusions of law, and the appropriate standards, we conclude the hearing panel's recommendation of discipline is appropriate.

The probation plan as adopted by the hearing panel included several requirements, one of which was payment of restitution to Bock's clients, that were to be performed within specified time periods that expired before the hearing before this court. Bock certified to the court that he had paid the restitution and had otherwise complied with other terms of the probation during the time between the filing of the hearing panel's final report and the hearing before this court, with the exception he has applied for but has not yet received malpractice insurance. Understanding that some terms of the probation have already been completed, we adopt the recommendations of the hearing panel.

IT IS THEREFORE ORDERED that Shelley Kurt Bock be suspended from the practice of law for a period of 3 years in accordance with Supreme Court Rule 203(a)(2) (2007 Kan. Ct. R. Annot. 261). His suspension is stayed, and he is placed on 3-years' supervised probation on the following terms and conditions:

1. Bock shall return to his divorce client the $119 she paid to him.

2. Bock shall also pay to the heir of William Breshears through her attorney, George Catt, the sum of $1,521.60, which sum represents the amount paid to Catt for work required because of Bock's failure to respond to requests for information.

3. Bock will continue his treatment with Stephen Lerner, Ph.D. This treatment shall continue throughout the period of supervised probation unless Dr. Lerner deems treatment no longer necessary. Dr. Lerner shall notify the Disciplinary Administrator in the event that Bock discontinues treatment against his recommendation. Bock shall provide Dr. Lerner with any appropriate release of information necessary to allow Dr. Lerner to provide such information to the Disciplinary Administrator.

4. In the event it becomes necessary for Bock to take medication, he shall have regular contact with a qualified medical professional

regarding the medication. Bock shall follow the qualified medical professional's recommendation regarding any medications prescribed.

5. Dr. Lerner shall make periodic reports to the Disciplinary Administrator's office. The reports shall update the Disciplinary Administrator on the need for treatment and the current treatment modality.

6. Bock shall not engage in the representation of clients in civil matters, including personal injury cases, divorce, annulment, or child support matters. Bock may represent clients in criminal matters; cases related to criminal defense, *e.g.*, drivers' license suspension cases and drug tax cases, as well as juvenile and child in need of care proceedings.

7. Bock's practice will be supervised by James T. George, a licensed attorney in good standing in Lawrence, Kansas. Bock shall allow Mr. George access to his files, calendar, and operating account and trust account records and comply with any request made by the supervising attorney. During the first year of supervision, Bock shall meet with the supervising attorney weekly. During the remainder of the probation period, Bock shall meet with Mr. George at Mr. George's direction. Mr. George shall prepare a detailed monthly report to the Disciplinary Administrator regarding Bock's status on probation.

8. Mr. George shall conduct an immediate and detailed audit of Bock's files. Six months after the completion of the first audit, Mr. George shall conduct a second audit. At the completion of the supervised probation and at such other times as either the Disciplinary Administrator or Mr. George deem appropriate, Mr. George shall conduct additional audits. After each audit Mr. George shall make a report regarding the same. If Mr. George discovers any violations of the KRPC, he shall include such information in his report. Mr. George shall provide the Disciplinary Administrator and Bock with a copy of each audit report. Bock shall follow all recommendations and correct all deficiencies noted in Mr. George's periodic audit reports.

9. As supervising attorney, Mr. George shall determine if the office procedures and diary procedures for Bock are appropriate.

Mr. George shall cause Bock to have a diary or calendaring system, letters for client contact, letters for notices to clients of hearings and scheduled meetings, and a method to track all phone messages and phone contacts from clients and the responses thereto.

10. Procedures shall be commenced whereby all phone contacts and phone messages are handled on a daily basis, unless a trial schedule prevents phone contacts with clients. No phone message, request, or entreaty from a client shall go more than 3 days without Bock contacting the client.

11. At the weekly meetings with his supervising attorney, Bock shall review all new retained and appointed cases. Bock shall present Mr. George with a diary and calendar information and appropriate fee information. Additionally, at that meeting, Bock and Mr. George shall review the following week's schedule in order to assure notice has been sent to the appropriate parties, appropriate preparation has been carried out, and all updates to the files have been completed.

12. As supervising attorney, Mr. George shall prepare and submit to the Disciplinary Administrator a monthly report in regard to the weekly meetings.

13. Mr. George will be acting as an officer and an agent of the court while supervising the probation and monitoring the legal practice of Bock. As supervising attorney, Mr. George shall be afforded all immunities granted by Supreme Court Rule 223 (2007 Kan. Ct. R. Annot. 361) during the course of his supervising activities.

14. Bock shall file with the Disciplinary Administrator written office procedures designed to monitor the status, deadlines, and court appearances of all matters in which he has undertaken representation. He shall modify that procedure if directed to do so by the Disciplinary Administrator.

15. Bock shall follow all written office procedures.

16. Bock shall continue to cooperate with the Disciplinary Administrator. If the Disciplinary Administrator requires any further information, Bock shall timely provide such information.

17. Bock shall obtain and continue to maintain professional liability insurance, if reasonably possible.

18. Bock shall not violate the terms of his probation or the provisions of the KRPC. In the event that Bock violates any of the terms of his probation or any of the provisions of the KRPC during the probationary period, Bock shall immediately report such violations to his supervising attorney and to the Disciplinary Administrator.

19. Costs of this matter in an amount to be determined by the Disciplinary Administrator shall be taxed to Bock and paid within 30 days after certification.

IT IS FURTHER ORDERED that at the end of the 3 years, if Shelley Kurt Bock has abided by all the conditions of his probation and satisfactorily completed probation, he may file a motion and supporting affidavits requesting to be discharged from probation in accordance with Supreme Court Rule 211(g)(7).

IT IS FURTHER ORDERED that if Shelley Kurt Bock fails to comply with the conditions of probation, probation may be revoked pursuant to Supreme Court Rule 211(g)(9) and disciplinary action taken in accordance with Supreme Court Rule 211(g)(10), (11), and (12).

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports.

NUSS, J., not participating.

LEBEN, J., assigned.